## GENERAL ELECTRIC CO. v. WABASH APPLIANCE CORPORATION et al.*

### No. 110.

Circuit Court of Appeals, Second Circuit.

Jan. 3, 1938.

*Writ of certiorari denied 58 S.Ct. 610, 82 L.Ed. —.

Howson & Howson, of New York City (Hubert Howson, Merrell E. Clark, and Alexander C. Neave, all of New York City, and John H. Anderson, of Cleveland, Ohio, of counsel), for appellant.

Darby & Darby, of New York City (Samuel E. Darby, Jr., and Paul Kolisch, both of New York City, of counsel), for appellees.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The Pipkin patent, No. 1,687,510, for an electric lamp bulb, granted October 16, 1928, on an application filed June 29, 1925, was held invalid below in this suit for infringement, but, if valid, infringed. The

two claims[1] sued on were held valid in General Electric Co. v. Save Sales Co., 6 Cir., 82 F.2d 100.

The invention is for a bulb with a novel inside frosted covering. It is the first inside frosted bulb produced having the requisite strength for commercial use. The patent teaches that to manufacture, the inside is given a frosting resulting in a frosty or clouded appearance and, in so doing, in the first coat or covering, there are created a multitude of tiny pits or depressions in the glass. This may be done by sand blasting with a fine powder or by etching with acid. The purpose is to diffuse the light from the incandescent filament or reduce the brightness or glare of the lamp, but the bulb must be made strong to withstand the shocks and impacts incident to manufacture, transportation, and use.

Prior to this invention, bulbs were frosted on the outside surface, but these were found to be defective, for they were dust retainers. To overcome this problem, moulding corrugations in the glass of the bulb were tried unsuccessfully. Other inventors attacked the problem.

Hewitt, No. 1,036,527, granted August 20, 1912, described an effort to make the outside surface adequately diffusing, while still preserving a particularly smooth surface. He said he produced lamps which did not have "relatively low emissive efficiency of frosted glass surfaces in which there are internal losses due to dirt reflection and refraction, and other losses due to dirt accumulations which cannot be easily removed." The Herrman (British) patent of 1913 considered the same problem of the internally frosted bulb and failed. Kennedy, in a patent granted July 21, 1903 (U.S.), suggested frosting the bulbs on the inside instead of the outside, leaving the outside surface smooth. In the trade this result was a failure, and that was due to the fact that the first frost etching treatment removes only a slight amount of glass. When applied to the outside of the bulb it appears not to affect the bulb's strength but, when applied to the inside surface, it reduces it against outside impact to but a small fraction of its original value. This makes the bulb unfit for commercial use. Thus, at this stage of the progress of the art (1924), no completely satisfactory diffusing lamp bulb had been devised for frosting on the inside in commercial production.

Pipkin's patent achieved the result. He refers to the conventional frost etching when applied to the inside of the bulbs rendering them fragile to such a degree as to occasion prohibitive breakage. Tests of bulbs, after this inside frosting treatment, showed that the frosting reduces the strength of the bulb from 44.8 to 3.2 on the scale of the bump tester. Pipkin says that, "if the bulb is given a further treatment which I term a strengthening treatment in which it is subjected to an etching or frosting treatment of a lower degree than that to which it was first subjected, it becomes quite strong. Indeed, it may be made practically as strong as the original clear glass bulb." The increase in strength was stated in certain instances to be as much as 1137 per cent. A frosting solution is injected into the bulb through a pipe and washed out; while it is then in a fragile structure, an acid solution is injected. The patent gives the formula which may be used for the frosting solution and the strengthening solution. The claims, however, are directed to the product—the bulb structure itself. It was found and recognized by this inventor that the first treatment resulting in a multitude of tiny pits or depressions eaten into the surface of the glass—millions of them to a square inch—could be strengthened by filling in these pits and crevices with a strengthening treatment. He says that this second treatment eats away still more glass from the inside surface, and by so doing produces the increase in strength to

---

1. A glass electric lamp bulb having its interior surface frosted by etching so that the maximum brightness of an ordinary incandescent lamp comprising such a bulb will be less than 25 per cent. of that of said lamp with a clear bulb, said interior bulb surface being characterized by the presence of rounded as distinguished from sharp angular crevices to such an extent that the strength to resist breakage by impact is greater than 20 per cent. of that of the clear bulb.

2. A glass electric lamp bulb having its interior surface frosted by etching so that the maximum brightness of an ordinary incandescent lamp comprising such a bulb will be less than 25 per cent. of that of said lamp with a clear bulb, said interior bulb surface being characterized by the presence of rounded as distinguished from sharp angular crevices to such an extent that the strength to resist breakage by impact is greater than 45 per cent. of that of the clear bulb.

which he refers. The multitude of tiny pits or depressions produced by the initial treatment are sharply angular in character. The treatment rounds them out, and it is this rounding out of the pits or depressions that makes for strength and remedies the fatal weakness of inside frosted bulbs.

To have accomplished this over the Kennedy patent of 1903 amounts to invention. The claims are novel. Although the advantages of inside frosted bulbs were recognized long before Pipkin, no one produced an inside frosted bulb with the adequate strength for commercial use. No one before had suggested rounding out the tiny frosted crevices by dissolving additional glass and thus rectifying the weakness which was attributable to the sharpness of those crevices.

It is argued by appellee that prior disclosures of double treatment were made known through writings. It was shown as early as 1887 by a glass technologist that the sharp angular surfaces of the crevices of a frosted surface could be rounded out by the use of dilute hydrofluoric acid, and certain of the technologists suggested the application of this knowledge for obtaining the desired optical effects in connection with focusing screens for cameras and the like. But no one before suggested or intimated that the rounding of the crevices was capable of having a strengthening effect on the frosted glass of any kind or that it could have any utility in connection with inside frosted electric lamp bulbs.[2] These disclosures added nothing to that of the Wood patent which was considered by the Patent Office when the Pipkin patent was issued. The Wood patent was for a method of making light diffusing screens for cameras. The method consists of first frosting the surface of the glass by an emery or carborundum blast to form upon it a multitude of microscopic dents or pits and then flowing it with hydrofluoric acid "which enlarges and smooths out the pits" into "minute concave lenses." The optical result claimed by this patentee was a diffusing power equal to that of the usual ground glass, while the intensity of the transmitted light was double that transmitted by such ground

glass. Wood concerned himself with optical effects, but had no conception of the second treatment as a strengthening quality, and he did suggest that such a screen might be useful for rendering the bulbs of incandescent lamps diffusing, but he did not intimate or hint at the idea of applying his process to the inside frosting of the bulbs for strength. No such problem confronted him and, as said in General Electric Co. v. Save Sales Co., supra, he did not advance the art in the quest for a strong inside frosted bulb.

The British patent No. 166,133 of 1922, entitled for "improvements in and relating to Screens and Sheets," did refer to the initial etching done by acid treatment or sand blasting, and to a second step for reducing or clearing such surface, stating this was done with hydrofluoric acid, and the patentee says that it produces a very efficient form of screen and that the image appears much brighter under similar projection conditions or arrangements than the image formed on the ordinary white sheet or screen as commonly used.

But in all the prior art to which reference is made no one before Pipkin treated with the strengthening of frosted surfaces or with lamp bulbs of any kind, and they did not contribute to the problem which faced Pipkin. No one seems to have found, before this inventor, that it was the sharpness of the microscopic etched surfaces that was responsible for the extraordinary weakness of the inside frosted bulb and no one before suggested that rounding them out restored the strength. Like all problems when solved, it may be argued to be simple, but where, as here, it appears that the accomplishment had eluded the search of those interested in finding its solution until this inventor's contribution, he should be accorded the fruits of a patent for his accomplishment. Diamond Rubber Co. v. Consolidated Tire Co., 220 U.S. 428, 435, 31 S.Ct. 444, 55 L. Ed. 527.

But it is argued that the patent is invalid because the statements appearing in the last paragraph of its specifications and in its claims that the frosted inside surface of the bulb is characterized by rounded, as distinguished from sharply angular,

---

[2] See Die Glashutte, 1887, in an article entitled "Contributions to the Knowledge of Glass Etching"; Sprechsaal, 1907, on the Etching and Ornamentation of Hollow Glass; Journal of Industrial and Engineering Chemistry, 1917, article by Tillotson.

pits or depressions, was inserted by an amendment to the application for the patent after it had been filed, and without a supplemental oath. The ·application into which these statements were inserted by amendment, without supplemental oath, was a continuation of the original application of February 4, 1924, and was so stated on its face when it was filed June 29, 1925. The original application was first made part of the continuation application and described the same strong inside frosted bulb and the same two-step method of producing it. In the original application which was accompanied by the inventor's oath, he pointed out clearly that the first etching produced pits in the glass having comparatively sharp angular shapes and that these were rounded out by the treatment suggested by his invention which he called a strengthening treatment. His original claim 8 was for a "bulb for electric lamps and similar articles having its inner surface covered with rounded etching pits or depressions." It was while his original application was still pending that the statements of which defendants complain were introduced by amendment into the specifications and claims of the continuation application which ultimately resulted in the patent being granted. The oath of the original application was all that was needed to support these statements. See Westinghouse Elec. & Mfg. Co. v. Metropolitan Elec. Mfg. Co., 2 Cir., 290 F. 661.

It is clear that the appellees infringe. The inside frosted lamps which they sell include bulbs of which the interior surfaces are frosted by etching. The bump test of the lamp shows that the inside frosted lamps were of the same strength as the clear lamps, which brings the lamps within both claims. Moreover, it appears that a former employee of the appellant for over twelve years was employed by the appellees and that the latter are now frosting bulbs in the same two-step treatment which this employee knew and used while in the employ of the appellant.

The individual appellees are officers and directors and the only stockholders of the corporation. Under these circumstances, the individuals are liable and the acts of the corporation are in effect theirs. Claude Neon Lights v. American Neon Light Corp., 2 Cir., 39 F.2d 548.

Decree reversed.