## GENERAL ELECTRIC CO. v. WABASH APPLIANCE CORPORATION et al.

### No. 7962.

District Court, E. D. New York.

Oct. 30, 1939.

Howson & Howson, of New York City (Hubert Howson, Merrell E. Clark, and Alexander C. Neave, all of New York City, and John H. Anderson, of Cleveland, Ohio, of counsel), for plaintiff.

Samuel E. Darby, Jr., and Darby & Darby, all of New York City (Paul Kolisch, of New York City, of counsel), for defendants.

GALSTON, District Judge.

This is a motion to punish the defendants for the violation of a decree relating to the infringement of Pipkin patent no. 1,-687,510. The patent was held valid and infringed by the Circuit Court of Appeals, 2 Cir., 93 F.2d 671.

It appears that the plaintiff desires an adjudication of the issue of infringement rather than the imposition of a fine; and likewise, though the defendants contend that a different structure is before the court, which should be the subject of a supplemental bill rather than of a motion to punish for contempt, they too urge that the court pass on the charge of infringement in this proceeding.

Three sizes of lamps are complained of; one of 40 watts, one of 50 and one of 60.

These are known as the defendants' Lustra lamps. Plaintiff's witness Spencer, a scientist in the employ of the plaintiff (who had testified in behalf of the plaintiff in the main case), had examined these lamps. He made photomicrographs of the inside surfaces at a magnification of 1100. That examination was similar to that which he had made of the Waco lamps in the main suit and he found that the Lustra lamps, as the Waco, are characterized by the presence of depressions with rounded bottoms as distinguished from sharp angular crevices. He also applied the bump tests and found that the strength of the bulbs on the same scale as that applied to a clear bulb averaged forty for the 40 watt lamps, twenty-eight for the 50 and thirty-two for the 60. Thus it appears that these lamps were more than 45% of the strength of the clear bulbs as defined within both claims of the patent. The test as to brightness showed that the lamps were "less than 25% of that of said lamp with a clear bulb," also as defined by the claims.

The defendant offered no testimony on the subject of brightness or strength. Thus the sole issue is whether the interior frosted surfaces of the Lustra lamps are characterized by the presence of rounded as distinguished from angular crevices.

The experts adopted different systems of microphotography. Dr. Allen, defendants' microscopic expert, criticized Mr. Spencer's technique on the ground that he had used transmitted instead of reflected light. Dr. Allen too supplemented his examination with stereoscopic pictures of his photomicrographs. Allen was of the opinion that the frosted surfaces of the General Electric bulbs and the challenged Lustra bulbs are not at all comparable. His reading of the photomicrographs and the stereoscopic pictures led him to the statement that the chief characteristic of the defendants' lamps was their *lack* of any particular characteristic, saying: "It is impossible to describe their surfaces." He found but a small percentage of rounded as distinguished from sharp angular crevices.

It is not easy to read these photomicrographs independently of expert guidance, nor to pass upon the correctness of the technique employed in making them. One must, of course, give heed to the larger experience of the witness Spencer over a period of twenty years in the study of glassware and experiments in microphotography in connection therewith; on

the other hand Dr. Allen is an expert in metallurgy and microscopy of acknowledged standing.

Allen pointed out that transmitted light leaves one to conjecture as to the shape and contour of the crystals. He says that Spencer's photographs 10, 13 and 16 show a considerable variation in the depth of the etch; that they are out of focus completely in some spots and sharply in focus in other spots, and that the pattern is radically different when compared to the General Electric etch shown in Exhibit 17. He questions whether the rounded cavities thought to be shown thereon are in fact not rounded elevations. He said that in a picture taken by transmitted light rounded areas may serve to distort the actual picture.

On the whole the testimony of Mr. Allen is more persuasive than that of Mr. Spencer. In this connection it must be remembered that he had the corroboration of the stereoscopic pictures to prove his point that there is no uniformity of characteristic in the Lustra structure. He also added an aural test on the assumption that difference in sound is an indication of difference in structure. He found the General Electric yielded a smooth tone of thoroughly uniform wave, where as the Wabash was "much more erratic as a sound; in other words the overtones in it are far greater and it is far louder, and its intensity can be varied by the degree of pressure used, which is not true of the General Electric. Whether I press softly or hard on the General Electric does not make a particle of difference, but it does make a big difference in the case of the Wabash."

This difference in result is perhaps explainable by the difference of the process of manufacture. It is not intended by this observation to indicate that a difference in process could avoid infringement of the patent in suit, for the two claims of the patent are for a product. Nevertheless the Pipkin specification describes a process of the so-called two-shot treatment, for the production of the bulb of that patent. The patent recites: "I have found, however, that if the bulb is given a further treatment, which I term a strengthening treatment, in which it is subjected to an etching or frost-ing treatment of lower degree than that to which it was first subjected, it becomes quite strong."

And in the opinion of the Circuit Court of Appeals in General Electric Co. v. Wabash Appliance Corporation, 2 Cir., 93 F.2d 671, at page 672, it is said: "He says that this second treatment eats away still more glass from the inside surface, and by so doing produces the increase in strength to which he refers. The multitude of tiny pits or depressions produced by the initial treatment are sharply angular in character. The treatment rounds them out, and it is this rounding out of the pits or depressions that makes for strength and remedies the fatal weakness of inside frosted bulbs."

The defendants' process of manufacture of the Lustra bulbs involves but one treatment of any etching solution; and so, on the basis of the instruction of the record in the main case, one could reasonably expect that the product defined in the claims of the patent would not result. The defendants' process, as testified to in this contempt proceeding, was to etch by one treatment and wash the glass, with an interval of a minute or two between the etching and the washing. That such interval seems to have some bearing on the strengthening of the bulb is apparently admitted by defendants' witness Flaherty; but there is no proof that such interval, assuming the strengthening of the structure to result therefrom, effects a rounding out of crevices. Of course, it cannot be argued that because the Lustra lamps respond to the tests as to brightness and strength and have their interior surface frosted by etching, such surface is "characterized by the presence of rounded as distinguished from sharp angular crevices." The burden of proof is strongly on the plaintiff on this motion to punish for contempt. Its proof rests largely on the photomicrographs, Exhibits 10, 13 and 16; but in considering the weight to be attached thereto it is important to have in mind that each individual photomicrograph is only of 1/200 of an inch of the surface of each bulb.

In the state of the record I am compelled, therefore, to deny the motion. Settle order on notice.