PICKWICK MUSIC CORPORATION, Leo Feist, Inc., Mills Music, Inc., Jerry Herman, Edwin H. Morris & Company, Inc., T. B. Harms Company, Reg Connelly Music, Inc., and Bourne, Inc., Plaintiffs,

v.

RECORD PRODUCTIONS, INC., et al., Defendants.

No. 65 Civ. 301.

United States District Court
S. D. New York.

June 19, 1968.

Abeles & Clark, New York City, for plaintiffs; John S. Clark and Robert C. Osterberg, New York City, of counsel.

Beldock & Kushnick, New York City, for defendants Defiance Disc, Inc. and Joseph Kurtin; Henry I. Bushkin, New York City, of counsel.

Walter Hofer, New York City, for defendants Presswell Records Mfg. Co., Inc., Ancora Productions, Inc., Edward Joseph, Domenick D. Joseph and Hammonton Records Inc.; Neil Boorstyn and Norman Stollman, New York City, of counsel.

J. Bertram Shair, New York City, for defendants Gimbel Bros., Inc., Merco Enterprises, Inc., J. R. Record Corp. and Floyd Bennett Farmers Market Corp.

Natanson, Gordon & Reich, New York City, for defendant King Karol, Inc.; Jay F. Gordon, New York City, of counsel.

Feuerstein & Underweiser, New York City, for defendant S. Klein Dep't Stores, Inc.; Peter Fischbein, New York City, of counsel.

Manlio Severino, John A. Severino, Ronald Severino, Ida Zuzzolo and George Alpert, defendants pro se.

## MEMORANDUM

MacMAHON, District Judge.

This is an action for copyright infringement brought under 17 U.S.C. by the music publishers of eight compositions. All of the compositions were used in a record album entitled "Belle Barth at Las Vegas."

Of the twenty-three defendants, two were not served (Bennie Halickman and Modell's Sporting Goods Co., Inc.), four were dismissed by stipulation (Colony Record & Radio Center, Inc., Colony Record and Radio Center, J. R. Record Corp. and Merco Enterprises, Inc.), four have conceded liability, contesting only damages (Gimbel Bros., Inc., King Karol, Inc., Floyd Bennett Farmers Market Corporation and S. Klein Department Stores, Inc.), and one had a default judgment taken against it (Record Productions, Inc.) (Tr. 149).

The remaining twelve defendants can be divided into three groups. The first group includes Manlio Severino, John A. Severino, Ronald Severino, Ida Zuzzolo and George Alpert. These individuals are all associated with Record Produc-

tions, Inc., which manufactured and sold the accused album. The second group consists of Defiance Disc, Inc. and Joseph Kurtin. Defiance and Kurtin pressed the album. The third group encompasses Presswell Records Manufacturing Co., Inc., Ancora Productions, Inc., Hammonton Records, Inc., Edward Joseph and Domenick D. Joseph. Presswell is a manufacturer, Ancora a record producer, and Hammonton is Ancora's sales organization. The Josephs are shareholders and officers of these corporations.

In the pretrial order, the parties stipulated that plaintiffs' copyrights are valid, that plaintiffs filed the proper notices, and that the album mechanically reproduces each of the copyrighted musical compositions. It stands without contradiction that no licenses for reproduction were ever issued (Tr. 122).

We will consider separately the liability of each group.

■ In the first group, liability is based on each individual's personal participation in the acts constituting infringement. Participation in the tort of copyright infringement makes each participant jointly and severally liable. H. M. Kolbe Co. v. Shaff, 240 F.Supp. 588 (S.D.N.Y.), aff'd, 352 F.2d 285 (2 Cir. 1965); Chappell & Co. v. Frankel, 285 F.Supp. 798 (S.D.N.Y.1968).

■ The proof at trial clearly establishes that Manlio Severino, John A. Severino, and George Alpert were the three individuals who ran Record Productions. The three of them formed the corporation (Tr. 10, 72). Manlio and John financed it (Tr. 12). Alpert recorded and edited the album (Tr. 12). All participated in the arrangements for the pressing of the album (Tr. 14, 16, 18, 37–40). After the pressing, Alpert sold the album (Tr. 14, 15, 54), assisted by John Severino (Tr. 15). The dissolution agreement of Record Productions of November 27, 1964 called for each of them to receive one-third of the profits or to pay one-third of the losses (PX 3).

Manlio Severino pleaded release as an affirmative defense. To support his de-

fense, he introduced an agreement between himself and plaintiffs' attorney (DX C), dated November 23, 1964. Manlio Severino contends that the agreement settled all claims against him which arose subsequent to December 31, 1961.

There were three law suits for copyright infringement against Manlio Severino and John Severino in 1962. Those suits were settled for $40,000. After default in payment, a new agreement (DX C) was entered into. The agreement deals only with the 1962 actions and has absolutely nothing to do with the subject matter of this litigation (Tr. 90–96).

Manlio Severino denied any involvement with Record Productions, Inc. (Tr. 86). We do not find the denial credible in view of the overwhelming evidence against him and his attempt to mislead the court with his frivolous defense.

We conclude that Manlio Severino, John A. Severino and George Alpert personally participated in Record Productions' copyright infringement and are therefore liable.

■ The activity of Ida Zuzzolo and Ronald Severino was considerably less than the others. Ida Zuzzolo performed merely ministerial office functions (Tr. 19, 53, 103). Ronald Severino did art work for Record Productions (Tr. 14, 53). No testimony linked Ida Zuzzolo or Ronald Severino to the manufacturing process. Ida Zuzzolo did some selling, but this merely consisted of taking telephone orders (Tr. 15). Ronald Severino denied he did any selling, stating that telephone orders were taken by George Alpert (Tr. 54).

Although both Ida Zuzzolo and Ronald Severino were officers of Record Productions (Tr. 13, 51, 56, 104; PX 7, PX 8), this, in itself, does not make them participants. We have already found that Manlio Severino, John A. Severino and George Alpert ran Record Productions. It does not appear that either Ida Zuzzolo or Ronald Severino ever functioned as a corporate executive (Tr. 52, 55, 56 104).

We find that Ida Zuzzolo and Ronald Severino did not participate in Record Productions' copyright infringement.

■ There is no doubt that Defiance Disc manufactured the album without having filed a notice of intention to use (Tr. 79, 80, 108). This is the clearest kind of copyright infringement. Defiance claims that it was never paid (Tr. 108). That is no defense. H. M. Kolbe Co. v. Shaff, supra, 240 F.Supp. 590. (In any case, there was evidence that Defiance was paid for 1,395 of the albums it pressed (Tr. 118).)

■ Defiance did not know it was infringing plaintiffs' copyrights. It had been assured that the appropriate licenses had been obtained (Tr. 73, 83, 109). But lack of knowledge of infringement is not a defense. Massapequa Publishing Co. v. Observer, Inc., 191 F.Supp. 261 (E.D.N.Y.1961).

We conclude that Defiance Disc manufactured the infringing album and is therefore liable.

■ The next question which we must answer is whether Joseph Kurtin participated in Defiance's act of infringement. Kurtin is the president of Defiance. He and his wife are its sole owners (Tr. 70, 71). He negotiated for pressing the album with John A. Severino and George Alpert (Tr. 73, 107) and pressed the album himself (Tr. 80).

Presumably Kurtin was acting in his corporate capacity in the negotiations and in the pressing. But his corporate office is not a shield of immunity. Federal Trade Comm'n v. Standard Education Society, 86 F.2d 692, 695 (2 Cir. 1936), modified in part and rev'd in part on other grounds, 302 U.S. 112, 58 S.Ct. 113, 82 L.Ed. 141 (1937).

We conclude that Joseph Kurtin personally participated in Defiance Disc's copyright infringement and is therefore liable.

The final group which we must consider encompasses Presswell, Ancora, Hammonton, Edward Joseph and Domenick Joseph.

**42**

■■ Presswell and Ancora admitted in their anwer that they manufactured or contributed to the manufacture of the infringing album. Hammonton, in its answer, admitted that it had sold the infringing album. Counsel for these defendants sought to limit the admission of Presswell and Ancora to the quantity of records which Presswell purchased from Defiance at Ancora's request (Tr. 140). This purchase was made after Ancora acquired the right to use the Record Productions name, label and album (PX 3; Tr. 26, 27, 111, 135).

There is no legal basis for Presswell and Ancora's assertion that a purchaser is a manufacturer because the seller happens to be a record manufacturer. Plaintiffs accepted these admissions. To allow defendants now to limit their admission to the quantity purchased from Defiance would surprise plaintiffs and prejudice their rights. Further, there is some evidence that someone besides Defiance was manufacturing the infringing album (Tr. 80, 81).

We conclude that Ancora and Presswell manufactured or contributed to the manufacture of the infringing album and that Hammonton sold the infringing album. They are therefore liable.

■■ Ancora gave notices of intention to use the eight copyrights here. The notices were received by the publishers on January 25, 1965 (DX E). This action was commenced on January 29, 1965. These notices were followed in February and March by checks for statutory royalties (DX E, DX G). Counsel for plaintiffs rejected all of them (DX E, DX F, DX G).

The notices of intention to use came too late. Notices should have been filed by Record Productions or Defiance before the musical works were actually reproduced. 17 U.S.C. § 101(e). Shapiro, Bernstein & Co. v. Remington Records, Inc., 265 F.2d 263, 268 (2 Cir. 1959). Ancora acquired an illegal album. Its attempt to file notices four days before litigation is self-serving and no defense whatsoever.

The checks which Ancora tendered in payment were improper. Payment of the statutory royalty is based on the number of albums manufactured. 17 U.S.C. § 1 (e). Ancora's checks were for albums "manufactured and sold." Plaintiffs could reject the improper tenders.

We conclude that the belated notices of intent to use and specious tenders of payment are a rather transparent attempt to build a defense. They will not limit the amount of recovery of compensatory or punitive damages, nor will they bar an award of attorney's fees.

■ We next consider whether Edward or Domenick Joseph participated in the infringing of Presswell, Ancora or Hammonton.

Both of the Josephs are officers and shareholders in Presswell (Tr. 65, 66), Ancora (Tr. 65) and Hammonton (Tr. 62). All three of these corporations had their headquarters in Domenick Joseph's personal office (Tr. 63, 65, 66). Domenick Joseph, on behalf of Ancora, filed the notices of intention to use and tendered the payments previously discussed (DX E, DX G). He also handled the legal affairs of Ancora (Tr. 146, 147).

Edward Joseph is the general manager of the Presswell plant (Tr. 132, 134). He operated in the same capacity at Presswell as Kurtin did at Defiance. Counsel for the Josephs asked Edward Joseph:

"Would you * * * describe * * * the way in which Presswell, yourself, and your brother, became so involved in this situation?" (Tr. 134.)

Edward Joseph responded that it arose from an agreement "we * * * [entered into] with George Alpert and the Severinos." (Tr. 135.)

We conclude that Domenick Joseph personally participated in Presswell and Ancora's copyright infringement and that Edward Joseph personally participated in Presswell's copyright infringement. They are therefore liable.

Defendants Presswell, Ancora, Hammonton, Edward Joseph and Domenick Joseph (Presswell group) cross-claimed against Manlio Severino, John Severino

and Ronald Severino. Although an answer is required to a cross-claim, Fed.R. Civ.P. 7(a), none was served by the Severinos. Failure to answer is an admission. Fed.R.Civ.P. 8(d). The Presswell group, however, never moved for judgment on the pleadings against the Severinos.

The cross-claim alleged that the Severinos warranted that all appropriate licenses had been obtained for the records which it delivered to Ancora, including the album involved here. At trial, however, it became apparent that the album involved here was not part of what the Severinos sold to the Presswell group (DX I). In fact, the Presswell group acquired the album from George Alpert (Tr. 26, 27), who had acquired it in the dissolution of Record Productions (PX 3).

After trial, the Presswell group expressly abandoned the contention that the album here was included in the purchase from the Severinos (Tr. 150).

In view of the failure to move for judgment and of the express abandonment of the allegation, we conclude that defendants Presswell, Ancora, Hammonton, Edward Joseph and Domenick Joseph are not entitled to recover on their cross-claim against Manlio Severino, John Severino and Ronald Severino.

Defiance Disc and Joseph Kurtin cross-claimed against the Presswell group and against Record Productions, Manlio Severino, John Severino, Ronald Severino, Ida Zuzzolo and George Alpert. The Presswell group denied the cross-claim. Of the other defendants, only Alpert answered the cross-claim.

The cross-claim alleges that Defiance and Kurtin had been assured by both groups that the appropriate licenses had been procured. At trial, Kurtin testified on direct that he never asked the Presswell group about licenses (Tr. 111, 112). Kurtin assumed that the Presswell group would procure the licenses (Tr. 112).

We conclude that Kurtin's own testimony mandates the dismissal of Defiance and Kurtin's cross-claim against Presswell, Ancora, Hammonton, Edward Joseph and Domenick Joseph.

Alpert entered a denial to the cross-claim of Defiance and Kurtin. At trial, Defiance and Kurtin established that Alpert had assured Kurtin that the album was fully licensed (Tr. 73, 83, 109). Defiance and Kurtin were innocent infringers who relied on Alpert's assurances.

We conclude that Defiance and Kurtin are entitled to recover against Alpert on their cross-claim.

Record Productions, Inc., Manlio Severino, John Severino, Ronald Severino and Ida Zuzzolo did not answer the cross-claim. This failure to answer is an admission. Fed.R.Civ.P. 8(d). The major allegations of the cross-claim were never abandoned at trial; indeed, they were proved.

We conclude that Defiance and Kurtin are entitled to recover against Record Productions, Inc., Manlio Severino, John Severino, Ronald Severino and Ida Zuzzolo on their cross-claim.

We find that Defiance, Presswell, Ancora and Hammonton infringed the plaintiffs' copyrights by their manufacture and sale of the album. We also find that Manlio Severino, John Severino, George Alpert, Joseph Kurtin, Edward Joseph and Domenick Joseph personally participated in the copyright infringement. We also find that Ida Zuzzolo and Ronald Severino did not participate in the copyright infringement.

We conclude that Presswell, Ancora, Hammonton, Edward Joseph and Domenick Joseph are not entitled to recover on their cross-claim against John Severino, Manlio Severino and Ronald Severino.

We conclude that Defiance Disc and Joseph Kurtin are not entitled to recover on their cross-claim against Presswell, Ancora, Hammonton, Edward Joseph and Domenick Joseph. Defiance Disc and Joseph Kurtin are, however, entitled to recover against Record Productions, Inc., Manlio Severino, John Severino, Ronald Severino, Ida Zuzzolo and George Alpert.

**44**

The foregoing constitutes the court's findings of fact and conclusions of law, as required by Fed.R.Civ.P. 52(a).

The issue of damages was reserved for future determination. The issue and computation of damages will, therefore, be referred to a Special Master. Fed.R. Civ.P. 53(b).

The interlocutory judgment to be entered hereon shall empower and direct the Special Master, to be named by the court, to hear and report, within sixty (60) days, on the damages attributable to infringement of plaintiffs' copyrights as a result of defendants' manufacture and sale and participation in the manufacture and sale of plaintiffs' compositions and also to hear and report on whether defendants should pay plaintiffs' costs, including reasonable attorneys' fees.

Settle interlocutory judgment on notice within five (5) days in accordance with this memorandum.

So ordered.