The **LOTTIE JOPLIN THOMAS TRUST**, Mary L. Wormley, Administratrix d/b/n of the Estate of Lottie Joplin Thomas, and Mary L. Wormley, Plaintiffs,

v.

**CROWN PUBLISHERS, INC.**, Olympic Records Corporation and Joseph Abend, Defendants.

No. 75 Civ. 1940 (JMC).

United States District Court, S. D. New York.

May 26, 1977.

Linden & Deutsch, New York City (Joseph Calderon, New York City, of counsel), for plaintiffs.

Denhoffer, Ruden & Cramer, New York City (Martin R. Cramer, New York City, of counsel), for defendants.

## OPINION

CANNELLA, District Judge:

After a bench trial, plaintiff is granted judgment on the complaint against defendants Joseph Abend and Olympic Records Corporation in the amount of $73,242.46 plus costs, and against defendant Crown Publishers, Inc. in the amount of $104,-738.17 plus costs.

## FACTS

This suit for copyright infringement turns on the present ownership of the copyrighted work "Treemonisha," composed by the late Scott Joplin, and two compositions originally contained in "Treemonisha," "Treemonisha (Prelude to Act III)" and "A Real Slow Drag: from Treemonisha." Joplin procured copyright protection for these works by registration with the Copyright Office and was issued certificates of copyright registration as follows:

"Treemonisha In 3 Acts"—Certificate dated May 22, 1911

"A Real Slow Drag: from Treemonisha" —Certificate dated July 15, 1913

"Treemonisha (Prelude to Act III)"—Certificate dated December 15, 1913

Pursuant to 17 U.S.C. § 24 [1] Lottie Joplin Thomas, Scott Joplin's widow, was issued

---

1. References herein are to sections of the Copyright Act as they existed prior to the copyright revisions of 1976, Pub.L. No. 94–553, 90 Stat. 2541 (October 19, 1976).

certificates of renewal of these copyrights, as follows:

"Treemonisha In 3 Acts"—Certificate dated May 25, 1938

"A Real Slow Drag: from Treemonisha" —Certificate dated July 16, 1940

"Treemonisha (Prelude to Act III)"—Certificate dated December 17, 1940[2]

On September 26, 1952 Lottie Joplin Thomas assigned these renewal copyrights to Wilbur Sweatman as trustee of the Lottie Joplin Thomas Trust (hereinafter the "Trust"). Sweatman remained the trustee of the Trust until his death on March 9, 1961, at which time Robert Rosborne was appointed successor trustee. Prior to his death, however, Sweatman executed a document that purports to transfer to the Wilbur Sweatman Music Publishing Company ("Music Publishing Company") all of the "right, title, and interest and Renewal interests in and to the musical compositions, entitled" "Treemonisha—In 3 Acts" and "A Real Slow Drag," among others.[3] The assignment, dated August 14, 1959, was executed by Wilbur Sweatman "acting as executor of the estate of Scott Joplin" and recorded by the Copyright Office on August 17, 1959. Scott Joplin, however, had no will, nor was Sweatman ever appointed the administrator of Joplin's Estate.[4] Moreover, a search of the Trust's files revealed no evidence of such an assignment.

Upon Sweatman's death, ownership of the Wilbur Sweatman Music Publishing Company, along with the purported copyright assignment, apparently devolved upon Robert Sweeney,[5] although the Surrogate Court's records of Sweatman's estate make no mention of the Joplin works or of the Music Publishing Company.

During the fall of 1972 defendant Joseph Abend, president and sole shareholder of defendant Olympic Records Corporation ("Olympic"), inquired of the Harry Fox Agency ("Fox") whether a license to record the three compositions that are the subject of this lawsuit could be obtained.[6] He was told that the agency could not issue such licenses,[7] although Fox did represent the Lottie Joplin Thomas Trust.

In spite of this, Olympic proceeded to record a five phonograph record set entitled "Scott Joplin His Complete Works,"[8] a set that included "Treemonisha," "A Real Slow Drag," and "Prelude to Act III." Abend testified that he assumed the Joplin compositions in issue were in the public domain and thus freely recordable. The set was first sold during the fall of 1974.

Shortly thereafter, the Trust's counsel (by then the law firm of Linden and Deutch) learned of the apparent infringement and notified Murray Hill Records of

---

Former section 24 provides, in pertinent part, that after 28 years from the date of the first publication

[t]he widow, widower, or children of the author, if the author be not living . . . shall be entitled to a renewal and extension of the copyright in such work for a further term of twenty-eight years . . . .

2. Expiration of these renewal terms has been extended throughout the pendency of this action. See, e. g., Pub.L. No. 93–573, 88 Stat. 1873 (December 31, 1974).

3. The Trust indenture apparently gave Sweatman "full power to grant, bargain, sell, convey, assign, [or] pledge" the Scott Joplin copyrights transferred to the Trust.

4. Wilbur Sweatman was, however, the administrator of the Lottie Joplin Thomas Estate, having been so appointed on March 27, 1953 by the New York Surrogate's Court.

5. See note 11, infra.

6. The Harry Fox Agency is engaged in the business of granting licenses for the production of phonograph recordings of copyrighted musical compositions.

7. It appears that a complete search of Fox's records at that time would have revealed that licenses for "A Real Slow Drag" could, in fact, have been granted. The Fox Agency was correct, however, in answering that it could not license the reproduction of "Treemonisha," in its entirety, or "Prelude to Act III."

8. Abend is the owner of the master tape used for the five record set. The records were actually pressed by Allentown Record Pressing Plant, Inc. of Allentown, Pennsylvania, after which they were sold to defendant Crown Publishers, Inc. ("Crown") for sale under the Murray Hill Records label.

this claim. Upon learning of this, Abend contacted the American Society of Composers, Authors and Publishers and was told that the Wilbur Sweatman Music Publishing Company was the publisher of the works in question. A search of the Copyright Office records revealed the Sweatman assignment. Based upon this information sale of the record set continued, and this suit was instituted.

Initiation of this lawsuit did not end matters, however. Abend, having learned of the Sweatman assignment, sought out Robert Sweeney, who, on behalf of the Wilbur Sweatman Music Publishing Company, assigned the renewed copyrights to himself and Joseph Abend, for the sum of $1.00.

## DISCUSSION

Defendants invoke the related equitable doctrines of laches and estoppel in defense of the charge of infringement. These defenses will be discussed prior to reaching the merits.

### Laches

Defendants claim that plaintiff's delay in instituting this action should bar her [9] from enforcing any copyright claim she may have. They assert that the plaintiff (or her predecessor in interest, the Trust) had constructive notice of Sweatman's competing claim to the copyright when his purported assignment was registered with the Copyright Office in August of 1959, and had actual notice of this claim prior to June 28, 1967 when Rosborne & Rosborne, then counsel to the Trust, inquired of Robert Sweeney regarding the matter.

■ This argument fails for two reasons. Firstly, the mere passage of time is insufficient to establish laches as a bar to suit. Some prejudice to one of the defendants must be added to the delay for it to ripen into laches. *Costello v. United States,* 365

U.S. 265, 282, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961); *Advanced Hydraulics, Inc. v. Otis Elevator Co.,* 525 F.2d 477, 479 (7th Cir. 1975); *Tobacco Workers Int'l Union, Local 317 v. Lorillard Corp.,* 448 F.2d 949, 958 (4th Cir. 1971); *In re Stilwell,* 120 F.2d 194 (2d Cir. 1941); *Edward B. Marks Music Corp. v. Wonnell,* 61 F.Supp. 722, 728 (S.D.N.Y.1945) (Conger, J.). The record herein is barren of any evidence of prejudice to the defendants. Their production and sale of the Joplin compositions did not begin until 1974, and the Trust immediately and vigorously asserted its copyright proprietorship. Additionally, when manufacture and sale of the recordings began, defendants were themselves totally unaware of the Sweatman assignment. This assignment was a fortuitous discovery made by Abend only after he was notified by plaintiff's counsel of the claimed infringement. Thus, defendants could not have been prejudiced by the Trust's failure to challenge the assignment prior to 1975.

■ Secondly, under the circumstances of this case plaintiff's delay was not unreasonable. Joplin's works, especially "Treemonisha," rested in oblivion until the use of his rag, "The Entertainer," in the highly successful movie entitled "The Sting" brought his compositions to prominence. Counsel to the Trust could have reasonably concluded that, prior to that time, enforcement of the copyright was not worth the cost of litigation, especially because no infringing phonograph record was on the market.

*Edward B. Marks Music Corp. v. Wonnell, supra,* is instructive in this regard. In that case there was no attempt to assert a copyright claim for 27 years. Because the song had achieved popularity only at the end of that period, however, the court rejected the defense of laches and held the claim timely asserted. 61 F.Supp. at 728–29.

9. This suit was instituted by the Lottie Joplin Thomas Trust and Mary L. Wormley, Administratrix of the Estate of Lottie Joplin Thomas (Wormley succeeded to this position on Wilbur Sweatman's death). On August 13, 1975 the Trust was terminated, and all of its interest in Scott Joplin's musical compositions was assigned to Mary Wormley, the sole beneficiary of the Lottie Joplin Thomas Trust. Thus Wormley, as an individual, is the sole remaining plaintiff in the case.

*Estoppel*

Defendants' contention that plaintiff is estopped from enforcing the copyright because of the Trust's previous conduct in this regard, an argument akin to the laches defense, also fails.

█ In order to establish an estoppel, it must be shown that the party to be estopped had knowledge of defendant's infringing conduct, and either intended that his own conduct be relied upon or acted so that the party asserting the estoppel has a right to believe it was so intended. Additionally, the defendant must be ignorant of the true facts and must rely on plaintiff's conduct to his detriment. *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir.), *cert. denied*, 364 U.S. 882, 81 S.Ct. 170, 5 L.Ed.2d 103 (1960); *Rohauer v. Killiam Shows, Inc.*, 379 F.Supp. 723, 731 (S.D.N.Y.1974) (Bauman, J.).

Even assuming that plaintiff was aware of the Sweatman assignment from its inception, none of the other elements of estoppel is present. *Defendants'* infringing conduct did not even begin until 1974, and the Trust immediately asserted its rights. Although defendants were, in fact, ignorant of the "true facts," plaintiff's claim of copyright proprietorship, they were also ignorant of the facts they assert as a basis for the estoppel. This being the case, they could not have relied on plaintiff's conduct to their detriment. Moreover, this argument is fatally undermined by Joseph Abend's own testimony that, after he contacted the Harry Fox Agency and was told they could not issue licenses covering the instant works, he assumed they were in the public domain and proceeded with sale of the record package, thereby risking the possibility of infringement.[10]

*Abandonment*

█ Related to the equitable doctrines of estoppel and laches is the claim that the Trust has abandoned any claim it or its successors may have in the copyright. In

order to effect an abandonment, the copyright proprietor must manifest by some overt act his intention to surrender his right. *Imperial Homes Corp. v. Lamont*, 458 F.2d 895, 898 (5th Cir. 1972); *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir.), *cert. denied*, 364 U.S. 882, 81 S.Ct. 170, 5 L.Ed.2d 103 (1960); *National Comics Publications v. Fawcett Publications*, 191 F.2d 594, 598 (2d Cir. 1951); *Filmvideo Releasing Corp. v. Hastings*, 426 F.Supp. 690, 695 (S.D.N.Y.1976) (Werker, J.); *Rohauer v. Killiam Shows, Inc.*, 379 F.Supp. 723, 730–31 (S.D.N.Y.1974) (Bauman, J.); *L&L White Metal Casting Corp. v. Cornell Metal Specialties Corp.*, 353 F.Supp. 1170, 1174 (E.D.N.Y.1972); *Marvin Worth Prods. v. Superior Films Corp.*, 319 F.Supp. 1269, 1273 (S.D.N.Y.1970) (Lasker, J.).

Far from indicating any intent on plaintiff's part to abandon the copyright, the evidence establishes that the Trust, from 1967 to date, asserted its proprietorship, albeit in the less than aggressive manner warranted by the lack of profitability of the protected works. Moreover, this is not a case wherein plaintiff permitted unauthorized and uncopyrighted copies to circulate for a significant period of time, *see Stuff v. E. C. Publications, Inc.*, 342 F.2d 143 (2d Cir.), *cert. denied*, 382 U.S. 822, 86 S.Ct. 50, 15 L.Ed.2d 68 (1965) (original copyright proprietor authorized or acquiesced in wide circulation of a large volume of the copyrighted material); *Hayden v. Chalfant Press, Inc.*, 177 F.Supp. 303 (S.D.Cal.1959) (copyright proprietor knowingly acquiesced in the reproduction and circulation of copyrighted maps for nineteen years prior to the attempted enforcement), as defendants argue. Although other recordings of the instant compositions were introduced into evidence at trial, it was established that neither plaintiff nor defendants knew of these recordings prior to the institution of this lawsuit.

---

**10.** A quick check of the original copyright dates of the instant compositions would have awakened Abend to the fact that, with proper renewal, the copyrights would still be in effect.

*The Sweatman Assignment*

Defendants' main substantive argument is that, by reason of the assignment of the "Treemonisha" and "Prelude to Act III" copyrights by Wilbur Sweatman to the Wilbur Sweatman Music Publishing Company,[11] defendants are presently the copyright proprietors of those works.[12] Defendants argue that 17 U.S.C. § 210 accords prima facie validity to the assignment in that it is registered with the Copyright Office, and that such validity has not been rebutted.[13]

The parties have not cited, nor has the Court's research uncovered, a single case holding that a copyright *assignment* on file with the Copyright Office is prima facie evidence of the facts stated therein. In fact, a recent decision of the Second Circuit casts severe doubts over that proposition. *See Epoch Producing Corp. v. Killiam Shows, Inc.*, 522 F.2d 737 (2d Cir. 1975), *cert. denied*, 424 U.S. 955, 96 S.Ct. 1429, 47 L.Ed.2d 360 (1976), wherein the court rejected assertions that, pursuant to 17 U.S.C. § 209, a certificate of copyright *renewal* is prima facie proof of the facts contained therein. *Cf. Rose v. Bourne, Inc.*, 176 F.Supp. 605, 610 (S.D.N.Y.1959) (Dimock, J.) (execution and recording of a copyright assignment does not create a legal ownership in the publication that did not already exist). Assuming, *arguendo*, the correctness of defendants' position, this merely places upon the opposing party the burden of producing evidence to rebut the presumption of validity raised by § 210, which burden

plaintiff has satisfied. *See Epoch Producing Corp. v. Killiam Shows, Inc.*, 522 F.2d 737, 746 (2d Cir. 1975), *cert. denied*, 424 U.S. 955, 96 S.Ct. 1429, 47 L.Ed.2d 360 (1976); *Kingsrow Enterprises, Inc. v. Metromedia, Inc.*, 397 F.Supp. 879, 881 (S.D.N.Y.1975) (Frankel, J.); *Baron v. Leo Feist, Inc.*, 78 F.Supp. 686, 692 (S.D.N.Y.1948), *aff'd*, 173 F.2d 288 (2d Cir. 1949); *Edward B. Marks Music Corp. v. Wonnell*, 61 F.Supp. 722, 725 (S.D.N.Y.1945) (Conger, J.).[14]

Sweatman executed the assignment as "executor of the estate of Scott Joplin." There is no proof, however, that Sweatman was the executor of an estate of Scott Joplin, nor were records of the administration of such an estate ever located by the parties. Moreover, although the Trust instrument gave Sweatman the power to convey trust assets, he made this assignment to his own Music Publishing Company without consultation with the Trust's counsel, without any consideration to the Trust and without even making a record of the transfer in the Trust's files.

■ The Court concludes that, under all of the facts and circumstances of this case, the assignment is invalid.

*Compulsory License*

■ Defendants also fail in their attempt to find refuge in the compulsory license provisions of Section 1(e) of the Copyright Act. Except for "A Real Slow Drag," for which a notice of use was filed in May of 1973,[15] there is absolutely no evidence in the

---

**11.** Defendants argue that these copyrights, as property of the Wilbur Sweatman Music Publishing Company, passed through the estate of Wilbur Sweatman to his sister Eva Sweatman, the sole legatee of the estate, and that thereafter Robert Sweeney, as sole legatee of the estate of Eva Sweatman, succeeded to the same.

**12.** If this were the case, plaintiff would not even have standing to assert the defendants' infringement.

**13.** 17 U.S.C. § 210 provides in pertinent part that

[t]he current catalog of copyright entries and the index volumes herein provided for shall be admitted in any court as prima facie evidence of the facts stated therein as regards any copyright registration.

**14.** Additionally, there is authority for the proposition that, upon proof of facts contrary to those stated in the catalog of copyright entries, the burden shifts back to the proponent of the record. *Werner Co. v. Encyclopaedia Britannica Co.*, 134 F. 831 (3d Cir. 1905); *Van Cleef & Arpels, Inc. v. Schechter*, 308 F.Supp. 674, 676 (S.D.N.Y.1969) (Levet, J.); *Gardenia Flowers, Inc. v. Joseph Markovits, Inc.*, 280 F.Supp. 776, 780 (S.D.N.Y.1968) (Levet, J.).

**15.** It shall be the duty of the copyright owner, if he uses the musical composition himself . . . or licenses others to do so, to file notice thereof . . . .

17 U.S.C. § 1.

record indicating that the Trust either permitted or knowingly acquiesced in (or even knew of, for that matter) the recording of any of the instant compositions. This is a prerequisite to use of the compulsory licensing privilege. 17 U.S.C. § 1. Moreover, even with respect to "A Real Slow Drag," defendants may not avail themselves of the provisions of Section 1(e) for they have failed to serve a notice of intention to do so on the Trust (or the Wilbur Sweatman Publishing Company) or to file a copy thereof with the Copyright Office.[16]

*Individual Liability of Defendant Abend*

■■■ An individual, including a corporate officer, director or stockholder, who causes a corporate defendant to infringe, or personally participates in the acts constituting the infringement, is jointly and severally liable for the infringement. *Hagemeyer v. Insect-O-Lite Co.*, 291 F.2d 696, 698 (6th Cir. 1961); *General Elec. Co. v. Wabash Appliance Corp.*, 93 F.2d 671, 674 (2d Cir.), *cert. denied*, 303 U.S. 641, 58 S.Ct. 610, 82 L.Ed. 1101 (1938); *Rohauer v. Killiam Shows, Inc.*, 379 F.Supp. 723, 729 (S.D.N.Y. 1974) (Bauman, J.); *Pickwick Music Corp. v. Record Prods., Inc.*, 292 F.Supp. 39, 40–41 (S.D.N.Y.1969) (MacMahon, J.); *H. M. Kolbe Co. v. Shaff*, 240 F.Supp. 588 (S.D.N.Y.), *aff'd*, 352 F.2d 285 (2d Cir. 1965). An actual intent to infringe (or lack thereof) is immaterial to liability. *MCA, Inc. v. Wilson*, 425 F.Supp. 443, 456 (S.D.N.Y.1976) (Cooper, J.); *Pickwick Music Corp. v. Record Prods., Inc.*, 292 F.Supp. at 41; *Screen Gems-Columbia Music, Inc. v. Mark-Fi Records, Inc.*, 256 F.Supp. 399, 402 (S.D.N.Y. 1966) (Weinfeld, J.). And, even lack of participation in the infringement will not insulate a corporate officer from liability where he had "the right and ability to supervise the infringing activity and also ha[d] a direct financial interest in such activities." *L&L White Metal Casting Corp. v. Cornell Metal Specialties Corp.*, 353 F.Supp. 1170, 1175 (E.D.N.Y.1972), *quoting*

*Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971). *See also MCA, Inc. v. Wilson*, 425 F.Supp. at 456.

As Abend admitted his participation in the infringing act, he is jointly and severally liable for Olympic's infringement. Abend negotiated with the pianist and arranged for him to produce the master tape (from which the phonograph records were produced); he remains the owner of the master tape; he negotiated the distribution arrangement with Murray Hill Records; and he conducted the investigation into the copyright proprietorship of the compositions used. Moreover, as president and sole shareholder of Olympic, Abend was in a position to supervise all of Olympic's activities and had a direct financial interest therein.

**RELIEF**

Under Section 101 of the Copyright Act, the copyright proprietor may recover both the damages he suffered and the profits made by the infringer due to the infringement. *F. W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233–34, 73 S.Ct. 222, 97 L.Ed. 276 (1952); *Thomas Wilson & Co. v. Irving J. Dorfman Co., Inc.*, 433 F.2d 409, 413–14 (2d Cir. 1970); *Peter Pan Fabrics, Inc. v. Jobela Fabrics, Inc.*, 329 F.2d 194, 197 (2d Cir. 1964).

*Profits*

At trial, it was stipulated that Olympic sold 27,796 copies of "The Complete Works." The sales price was $4.15 per album, with costs of $3.04 per album. Thus, Olympic's profits on the records were $1.11 per set, for a total of $30,853.56.

Plaintiff, however, is not entitled to this entire amount because the statute limits recovery to those profits "which the infringer shall have made *from [the] infringement*." 17 U.S.C. § 101(b) (emphasis sup-

---

16. [W]henever any person . . . intends to use a copyrighted musical composition . . . relying upon the compulsory license provision of this title, he shall serve notice of such intention . . . upon the copyright proprietor . . . ., sending to the copyright office a duplicate of such notice.
17 U.S.C. § 1(e).

plied). The infringer's profits are to be apportioned "so as to give the owner of the copyright only that part of the profits found to be attributable to the use of the copyrighted material as distinguished from what the infringer himself has supplied . . . ." *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 396, 60 S.Ct. 681, 682, 84 L.Ed. 825 (1940). *Accord, Orgel v. Clark Boardman Co.*, 301 F.2d 119, 121 (2d Cir.), *cert. denied*, 371 U.S. 817, 83 S.Ct. 31, 9 L.Ed.2d 58 (1962); *Neal v. Thomas Organ Co.*, 241 F.Supp. 1020, 1022 (S.D.Cal.1965).

"Treemonisha" fills one entire "side" of the five-record set, making it only one-tenth of the entire package. Even so, plaintiff argues that inclusion of "Treemonisha" made the set a "complete works," the only one on the market, and thus was responsible for its entire profits. Plaintiff finds support for her position in *Neal v. Thomas Organ Co., supra,* wherein the defendant, in producing and selling a self-teaching organ instruction course, had infringed a copyright covering the instruction manual. The court refused to apportion the profits between the instruction manual and the phonograph records used, finding that defendants' profit was attributable to the course as a whole and none could be derived from sale of the records alone.

This Court finds such a situation distinguishable from the one at bar. Although plaintiff is entitled to a premium above the straight percentage apportionment requested by defendants, it cannot be said that all the profits earned by the record set are attributable to the fact that it is a "complete works" album. The Court finds instead that one-half of the profits is

justly attributable to the use of "Treemonisha" in defendants' infringing product. Accordingly, Abend and Olympic are jointly and severally liable to plaintiff for disgorgement of profits in the amount of $15,426.78.

Defendant Crown Publishers, Inc. sold 25,594 record sets, each purchased from Olympic at $4.15 per set. As 40% of the albums were resold at $6.50 per copy, and the remainder at a price of $11.99, Crown had a total profit on the album of $144,450.34. Crown is liable for one-half of this amount, or $77,225.17.

### Damages

Plaintiff has not introduced any evidence of damages suffered by reason of the instant infringement. She chooses instead to rely on the "in lieu of" clause of 17 U.S.C. § 101(b).[17] This, of course, is plaintiff's prerogative. *Robert Stigwood Group Ltd. v. O'Reilly*, 530 F.2d 1096, 1101 n. 11 (2d Cir. 1976), *cert. denied*, 429 U.S. 848, 97 S.Ct. 135, 50 L.Ed.2d 121 (1977).

With respect to "A Real Slow Drag," for which a Notice of Use was filed on May 14, 1973, plaintiff is limited to a statutory royalty of two cents per record plus a further sum, not to exceed three times this amount, as the court may in its discretion award. *Shapiro, Bernstein & Co. v. Goody*, 248 F.2d 260, 265–66 (2d Cir. 1957), *cert. denied*, 355 U.S. 952, 78 S.Ct. 536, 2 L.Ed.2d 529 (1958). *See* 17 U.S.C. § 101(c).

As for the infringement of "Treemonisha" as an entire work and "Prelude to Act III",[18] the Court is not so limited. In

---

17. If any person shall infringe the copyright in any work protected under the copyright laws of the United States such person shall be liable:

 .  .  .  .  .  .  .

 (b) . . . [t]o pay to the copyright proprietor such damages as the copyright proprietor may have suffered due to the infringement, . . . or in lieu of actual damages . . . such damages as to the court shall appear to be just  .  .  .  .

18. In *Robert Stigwood Group Ltd. v. O'Reilly*, 530 F.2d 1096 (2d Cir. 1976), *cert. denied*, 429

U.S. 848, 97 S.Ct. 135, 50 L.Ed.2d 121 (1977), the Second Circuit held that performance of an entire dramatico-musical composition results in separate infringements of the copyright covering the entire work and those covering each individual musical composition contained therein. *Id.* at 1103–05. This holding applies in the instant case, where a phonograph record has been held to infringe both the copyright covering a dramatico-musical composition— "Treemonisha—In 3 Acts"—and two of its component parts—"A Real Slow Drag: from Treemonisha" and "Treemonisha (Prelude to Act III)."

fact, it has broad discretion in awarding "in lieu of" damages, *F. W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 73 S.Ct. 222, 97 L.Ed. 276 (1952); *Morser v. Bengor Prods. Co.*, 283 F.Supp. 926, 929 (S.D.N.Y.1968) (MacMahon, J.), although the statute does suggest an award of "$1 for every infringing copy made or sold by or found in the possession of the infringer or his agent or employees . . . ." 17 U.S.C. § 101(b). In exercising its discretion, the Court must take into consideration a number of factors, the most relevant here being the relative degrees of innocence of the defendants. *See, e. g., L&L White Metal Casting Corp. v. Cornell Metal Specialties Corp.*, 353 F.Supp. 1170, 1176 (E.D.N.Y. 1972) (Moore, J.).

Because defendants Abend and Olympic Records were responsible for all aspects of production of the record set, including the procuring of copyright licenses where required, the Court awards damages in the full amount suggested by the statute, $1 per album for infringement of the copyrighted "Treemonisha In 3 Acts," and $1 per album for infringement of the copyright covering the musical composition "Treemonisha (Prelude to Act III)," plus 8¢ per album for infringement of the copyrighted composition "A Real Slow Drag: from Treemonisha." "In lieu of" damages thus total $57,815.68.

In that defendant Crown Publishers merely distributed the infringing product and had no part in its manufacture, the Court awards total damages of $1 per copy of the album set either sold or in its possession (inclusive of the 2¢ per copy awarded under § 101(e)), for a total of $27,513.

The Court declines to award counsel fees.

### CONCLUSION

In accordance with the foregoing decision, plaintiff Mary L. Wormley is hereby granted judgment against defendants Joseph Abend and Olympic Records Corporation in the amount of $73,242.46 plus costs, and against defendant Crown Publishers, Inc. in the amount of $104,738.17 plus costs.

Furthermore, defendants are enjoined from the further manufacture and sale of any phonograph recordings containing reproductions of any part of the instant compositions unless and until they acquire licenses therefor.

The foregoing constitute the findings of fact and conclusions of law of the Court pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

SO ORDERED.