The **LOTTIE JOPLIN THOMAS TRUST,** Mary L. Wormley, Administratrix d/b/n the Estate of Lottie Joplin Thomas, and Mary L. Wormley, Individually, Plaintiffs-Appellees,

v.

**CROWN PUBLISHERS, INC.,** Olympic Records Corporation, and Joseph Abend, Defendants-Appellants.

**No. 641, Docket 77–7417.**

United States Court of Appeals, Second Circuit.

Argued Feb. 15, 1978.
Decided Sept. 21, 1978.

Robert C. Osterberg, New York City (Abeles Clark & Osterberg, New York City, on the brief), for defendants-appellants.

Joseph Calderon, New York City (Jules D. Zalon, and Linden & Deutsch, New York City, on the brief), for plaintiffs-appellees.

Before LUMBARD, TIMBERS and GURFEIN, Circuit Judges.

TIMBERS, Circuit Judge:

This is an appeal from a judgment for copyright infringement entered after a bench trial in the Southern District of New York, John M. Cannella, District Judge, 195 U.S.P.Q. 49 (1977), awarding to plaintiff Mary L. Wormley declaratory and injunctive relief, together with $177,980.73 damages ($73,242.46 against defendants Olympic Records Corporation and Joseph Abend; $104,738.17 against defendant Crown Publishers, Inc.), plus interest and costs according to law.

We affirm substantially on the opinion of Judge Cannella dated May 26, 1977. We accept his findings of fact, Fed.R.Civ.P. 52(a), and we agree with his conclusions of law.

## I.

The complaint in this copyright infringement action which was commenced in April 1975 alleged that the record album "Scott Joplin—His Complete Works", produced and distributed by defendants, infringed plaintiff's [1] copyrights in the opera composed by Scott Joplin, "Treemonisha", and two compositions originally contained in it, "A Real Slow Drag: from Treemonisha" and "Treemonisha (Prelude to Act III)".

Scott Joplin had obtained from the Copyright Office certificates of copyright regis-

---

1. Originally the action was commenced by the Lottie Joplin Thomas Trust and Mary L. Wormley, Administratrix of the Estate of Lottie Joplin Thomas. On August 13, 1975 the Trust was terminated. Mary L. Wormley was assigned all interest in Joplin's musical compositions. Accordingly, Mary L. Wormley as an individual is the sole remaining plaintiff in the action.

tration of these three works in 1911 and 1913. He died in 1917. In 1938 and 1940, Scott Joplin's widow, Lottie Joplin Thomas, obtained certificates of renewal of the three copyrights.[2]

On September 26, 1952, Lottie Joplin Thomas assigned her copyright interests in the three works to Wilbur Sweatman as trustee of the Lottie Joplin Thomas Trust. Sweatman had been an associate of Scott Joplin. On August 14, 1959, Sweatman "acting as executor of the estate of Scott Joplin"[3] purported to assign the copyrights to the Wilbur Sweatman Music Publishing Company. Sweatman's assignment of August 14, 1959 was recorded in the Copyright Office on August 17, 1959. No evidence of such an assignment was ever found in the files of the Lottie Joplin Thomas Trust.

Upon the death of Sweatman in 1961, Robert Sweeney became the owner of the Wilbur Sweatman Music Publishing Company and the purported copyright assignment. The Surrogates Court's records, however, do not refer in any way to the compositions of Scott Joplin or to the Wilbur Sweatman Music Publishing Company.

In the fall of 1974, Joseph Abend, president and sole shareholder of Olympic Records Corporation, contacted the Harry Fox Agency to inquire whether a license to record the three compositions here involved could be obtained. The agency told Abend that it could not grant such a license. Abend made no further attempt to obtain a license. Instead, Olympic Records proceeded to record, and in the fall of 1974 to sell, the album "Scott Joplin—His Complete Works." One side of the five record set included selections from the opera "Treemonisha" under the caption "Highlights from Treemonisha", including the compositions,

"A Real Slow Drag" and "Prelude to Act III".

By a letter dated January 7, 1975, plaintiff's counsel notified defendants that the album infringed the copyrights held by the Joplin trust. Upon receipt of this letter, Abend contacted the American Society of Composers, Authors and Publishers (ASCAP). He was told that the Wilbur Sweatman Music Publishing Company was the publisher of the compositions in question. A search of the Copyright Office records disclosed the purported Sweatman "assignment" of August 14, 1959. Armed with this disclosure, Olympic Records continued to sell the record album here involved.

The instant action was commenced in the Southern District of New York on April 23, 1975. Shortly thereafter Abend, having learned of the Sweatman assignment, contacted Sweeney, the owner of the Wilbur Sweatman Music Publishing Company since Sweatman's death in 1961. The upshot was that Sweeney, on behalf of the Company, assigned the renewed copyrights to the compositions in question to himself and Abend for a consideration of $1.00.

## II.

■ We shall not tarry on the issue of liability. Our careful review of the record as a whole leaves us with the firm conviction that the district court's findings of fact were not clearly erroneous. We also agree with the district court's conclusions that Mary L. Wormley is the copyright proprietor of the three musical compositions here involved; that defendants infringed the copyrights of those compositions; that defendants' counterclaims were properly dismissed on the merits; that permanent in-

2. Certificates of renewal of the copyrights were issued pursuant to Section 24 of the Copyright Act, 17 U.S.C. § 24 (1970) (the Act).

  The jurisdiction of the district court in the instant action was based on the Copyright Act, 17 U.S.C. § 1 et seq. (1970), *as amended* (Supp. IV 1974), and its jurisdictional implementation, 28 U.S.C. § 1338(b) (1970).

  All citations to the Copyright Act in this opinion, unless otherwise indicated, are to the Act *prior* to its general revision in 1976. See

General Revision of Copyright Law, Pub.L.No. 94–553, 90 Stat. 2541, approved October 19, 1976, effective January 1, 1978, codified at 17 U.S.C. app. § 101 et seq. (1976).

3. Scott Joplin left no will. Sweatman never was appointed administrator of his estate. Sweatman, however, was appointed administrator of the Lottie Joplin Thomas estate on March 27, 1953 by the Surrogates Court for New York County.

junctions were properly entered enjoining defendants from further manufacture and sale of records of such compositions unless defendants obtain licenses to do so; and, liability having been correctly determined, that the award of damages, interest and costs in favor of plaintiff and against defendants was properly made.

While we agree with the district court's disposition of each of appellants' contentions, we nevertheless shall briefly state here the reasons for our rulings on what we regard as the principal contentions of appellants.

First, appellants argue that plaintiff was barred by laches and estoppel from denying that the Wilbur Sweatman Music Publishing Company owned the copyrights here in question. In attempting to establish the defense of laches defendants failed to make the required showing that plaintiff (or her predecessors in interest) did not assert her or their rights diligently, and that such asserted lack of diligence, even had it been established, resulted in prejudice to them. *Costello v. United States,* 365 U.S. 265, 282 (1961); *Roberts v. Morton,* 549 F.2d 158, 163–64 (10 Cir. 1976); *Weiszmann v. District Engineer, United States Army Corps of Engineers,* 526 F.2d 1302, 1306 (5 Cir. 1976); *Advanced Hydraulics, Inc. v. Otis Elevator Co.,* 525 F.2d 477, 479 (7 Cir.), *cert. denied,* 423 U.S. 869 (1975).[4] Defendants also failed to establish their defense of estoppel. Among other things, they did not prove that they relied detrimentally upon plaintiff's failure to contest the Sweatman assignment. *Rohauer v. Killiam Shows, Inc.,* 379 F.Supp. 723, 731 (S.D.N.Y.1974), *rev'd on other grounds,* 551 F.2d 484 (2 Cir.), *cert. denied,* 431 U.S. 949 (1977).[5]

The district court also properly rejected defendants' claims that they were the copyright proprietors of the musical compositions in question as a result of the assignment of the copyrights by Sweatman to the Wilbur Sweatman Music Publishing Company, and eventually by that company to Abend. The purported assignment refers to Sweatman as executor of Scott Joplin's estate. There never was any such executor. The renewal rights actually were owned by Lottie Joplin. Even assuming that Sweatman thought that he was acting as trustee of the Lottie Joplin Thomas Trust, his assignment of trust property to his own company would be highly suspect. Moreover, the assignment failed to recite any consideration for the transfer. Absent any other evidence of the circumstances of this transaction, the district court correctly held the transfer invalid as the basis for a defense in the instant infringement action.

The district court also was correct in rejecting the defense based upon the compulsory licensing provisions of Section 1(e) of the Copyright Act. 17 U.S.C. § 1(e) (1970).[6] The record amply supports the

---

4. Clearly defendants sustained no prejudice from plaintiff's inaction regarding the Sweatman assignment. Abend discovered the assignment at least six months after he had begun production and distribution of the infringing record set.

   Nor was plaintiff's delay in challenging the assignment unreasonable. The compositions here in question remained relatively obscure until "The Sting", a highly popular motion picture, stimulated a market for Joplin's music. Moreover, no infringing record had been produced as yet. Prior to 1975 it was reasonable to assume that enforcement of the copyright was not worth the cost of litigation.

   Aside from the asserted delay in challenging the assignment, there is no basis for a claim of laches. Defendants sold their first album in the fall of 1974. Plaintiff's counsel notified defendants of their copyright in January 1975. This action was instituted in April 1975.

5. As stated above, note 4, *supra,* Abend discovered the assignment at least six months after he had begun producing the record set. He therefore could not have relied upon the assignment as a basis for initiating the production of the infringing record set. Indeed, Abend testified that, after contacting the Harry Fox Agency, he proceeded on the assumption that the disputed works were in the public domain.

6. Section 1(e) of the Copyright Act, 17 U.S.C. § 1(e) (1970), in relevant part provides:

   "It shall be the duty of the copyright owner, if he uses the musical composition himself for the manufacture of parts of instruments serving to reproduce mechanically the musical work, or licenses others to do so, to file notice thereof, accompanied by a recording fee, in the copyright office, and any failure to file such notice shall be a complete defense to

court's finding that plaintiff neither authorized nor acquiesced in the recording of compositions as to which notice was required to be filed. Proper notice was filed with respect to "A Real Slow Drag". Defendants moreover failed to give notice of their reliance on the compulsory licensing provisions of Section 1(e), as required by Section 101(e) of the Copyright Act. 17 U.S.C. § 101(e) (1970).[7]

On this record therefore the district court correctly held that defendants were liable for infringing plaintiff's copyrights on the three compositions here involved.

### III.

Having affirmed the district court's decision on the issue of liability, we turn now to the issue of damages. It was with respect to this issue—particularly the burden of proof on the apportionment of profits derived from copyright infringement—that we requested counsel at the time of argument to submit in letter form the authorities upon which they relied. They did. Having carefully examined the authorities submitted by counsel and having further reviewed the record in the light of such authorities and those disclosed by our own research, we affirm in all respects the district court's determination on the issue of damages.

On this aspect of the case, the district court awarded to plaintiff:

(1) *Profits*

Each defendant was held liable for one-half of the profits it realized on the sale of the infringing album, as follows:

| | |
|---|---|
| Abend and Olympic | $15,426.78 |
| Crown | 77,225.17 |
| Total profits | $92,651.95 |

(2) *Damages*

Statutory "in lieu" damages[8] were awarded against each defendant as follows:

| | |
|---|---|
| Abend and Olympic | $57,815.68 |
| ($1.00 per album for "Treemonisha In 3 Acts"; $1.00 per album for "Treemonisha [Prelude to Act III]"; and 8¢ per album for "A Real Slow Drag: from Treemonisha") | |
| Crown | 27,513.00 |
| ($1.00 per album sold or in its possession, inclusive of the 2¢ per copy awarded under § 101(e)) | |
| Total "in lieu" damages | $85,328.68 |
| Total award | $177,980.63 |

(3) *Interest*

At 6% according to law from April 23, 1975, the date the action was commenced.

(4) *Costs*

Statutory costs according to law.

(5) *Counsel Fees*

None

The only elements of the district court's award which warrant brief mention are those with respect to profits and statutory "in lieu" damages.

### (A) PROFITS

The parties stipulated that Olympic sold 27,796 copies of the record set, for a total profit of $30,853.56. Under Section 101(b) of the Act, plaintiff was entitled to only that portion of the profits "which the infringer . . . made from [the] infringement". 17 U.S.C. § 101(b); *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 399 (1940). The district court held that one-half of the profits of the infringing album were attributable to its use. Defendants argue that there was no basis for this apportionment of profits. We disagree.

any suit, action, or proceeding for any infringement of such copyright."

**7.** Section 101(e) of the Copyright Act, 17 U.S.C. § 101(e) (1970), in relevant part provides:
"Whenever any person, in the absence of a license agreement, intends to use a copyrighted musical composition upon the parts of instruments serving to reproduce mechani-

cally the musical work, relying upon the compulsory license provision of this title, he shall serve notice of such intention, by registered mail, upon the copyright proprietor at his last address disclosed by the records of the copyright office, sending to the copyright office a duplicate of such notice."

**8.** See note 9 *infra.*

■ First, the law is clear that defendants had the burden of proving what portion of their total profits resulted from the non-infringing recordings. 17 U.S.C. § 101(b); *F. W. Woolworth Co. v. Contemporary Arts, Inc.,* 344 U.S. 228, 230 (1952); *Sheldon v. Metro-Goldwyn Pictures Corp.,* 106 F.2d 45 (2 Cir. 1939), *aff'd,* 309 U.S. 390 (1940). Second, placing the apportionment burden on defendants best comports with our admonition that in apportioning profits "every indulgence should be granted plaintiff in an attempt to arrive at a sum which is assuredly adequate." *Orgel v. Clark Boardman Co.,* 301 F.2d 119, 121–22 (2 Cir.), *cert. denied,* 371 U.S. 817 (1962). Third, this is precisely the approach taken in the revised Copyright Law. See note 2, *supra.* Thus, 17 U.S.C. app. § 504(b) (1976) now provides that "the infringer is required to prove . . . the elements of profit attributable to factors other than the copyrighted work." Fourth, placing the apportionment burden on the wrongdoer is sensible, since in most cases all information regarding profits is exclusively in the possession of the infringer.

■ In the district court, defendants merely asserted that, since "Treemonisha" filled one side of a five record set, plaintiffs were entitled to only 10% of the profits. The court properly rejected an award based on such a meaningless percentage. As the court observed, the inclusion of the compositions in question made defendants' album the only "complete" set of Joplin's works, and it was advertised as such. Absent evidence by defendant to dispute the contributions of these compositions to the marketability of the album, we hold that the award of one-half of the profits from the *complete* works was not unreasonable.

## (B) DAMAGES

Defendants further argue that the district court erred in awarding statutory "in lieu" damages in addition to the actual profits realized by defendants from their sale of the infringing album. We disagree.

A strict reading of this provision of the Act might suggest that the remedies are mutually exclusive, i. e., that the district court may award either actual damages and profits *or* statutory damages.[9] However, we have construed the Act otherwise. We have given the district courts broad discretion to make awards which serve the recognized compensatory and deterrent objectives of the Act in accordance with *F. W. Woolworth Co. v. Contemporary Arts, Inc., supra,* 344 U.S. at 233. Accordingly, we have held that, where damages are not susceptible of precise calculation, it is error for the district court not "to consider . . . the propriety of a statutory award . . . for damages . . . in addition to the actual profits shown to have been made by the infringer." *Peter Pan Fabrics, Inc. v. Jobela Fabrics, Inc.,* 329 F.2d 194, 197 (2 Cir. 1964).

■ In the instant case it would have been virtually impossible to calculate the profits *lost* by the copyright owners, or other damages sustained as a result of the infringement. Under these circumstances, to have limited plaintiff to a choice between *either* statutory damages *or* profits realized by defendants, would have diluted the deterrent effect of the award and only partially have compensated plaintiff. We therefore hold that the district court did not err in awarding to plaintiff the profits realized from the infringement, plus the statutory "in lieu" damages.

The amount of the award against each defendant was within the statutory limits. We hold that the district court acted well within its discretion in its award.

---

9. Section 101(b) of the Copyright Act, 17 U.S.C. § 101(b) (1970), in relevant part provides:

"If any person shall infringe the copyright in any work protected . . . such person shall be liable:

. . . . .

(b) To pay to the copyright proprietor such damages as the copyright proprietor may have suffered due to the infringement, as well as all the profits which the infringer shall have made from such infringement, . . . or *in lieu of* actual damages and profits, such damages as to the court shall appear just, . . . . " (emphasis added).

We have carefully considered defendants' other contentions and find them to be without merit.[10]

Affirmed.

**10.** For example, defendants contend that the district court's award of statutory damages was improper in view of defendants' good faith reliance on the apparent copyright ownership of Sweatman. Aside from the fact that defendants did not rely on the Sweatman assignment in producing the album, neither the statute nor prior decisions suggest that a showing of good faith precludes the award of statutory damages.

Also, contrary to defendants' claim that there cannot be more than one copyright on the same material, the district court properly held that there were three separate infringements of the three separately copyrighted compositions. In *Robert Stigwood Group, Ltd. v. O'Reilly,* 530 F.2d 1096 (2 Cir.), *cert. denied,* 429 U.S. 848 (1976), we held that "[w]hen the copyrights on the songs can live their own copyright life. . . ." liability attaches with respect to each copyright infringed. *Id.* at 1105. See *L. A. Westermann Co. v. Dispatch Printing Co.,* 249 U.S. 100 (1919). The record in the instant case amply supports the conclusion that "Prelude to Act III" and "A Real Slow Drag" had a commercial life separate from that of the opera "Treemonisha".