**Christopher SCANLON, Plaintiff,**

v.

**Gil KESSLER, Bruce Marcus, John Weis, and Gay Male S/M Activists, Defendants.**

**No. 97 Civ. 1140(CBM).**

United States District Court, S.D. New York.

July 9, 1998.

---

Law Office of Glenn Greenwald, P.C. by Glenn Greenwald, New York City, for Plaintiff.

Paul O'Dwyer, New York City, for Defendants.

## MEMORANDUM OPINION

MOTLEY, District Judge.

### I. BACKGROUND

Plaintiff, Christopher Scanlon ("Scanlon"), commenced this action on February 19, 1997, against defendants, Gil Kessler ("Kessler"), Bruce Marcus ("Marcus"), John Weis ("Weis"), and Gay Male S/M Activists ("GMSMA"), alleging: (1) copyright infringement; (2) breach of fiduciary duty; (3) breach of contract; and (4) defamation.[1] These claims arise from defendants' alleged violations of 17 U.S.C. §§ 101, *et seq.*, New York common law, and New York statutory law. Scanlon seeks statutory damages, attorney's fees and costs, and injunctive relief.

By order dated November 13, 1997, the court severed Scanlon's copyright infringement claim from the other three claims. A bench trial on the copyright infringement claim was held before the court on November 17, 18, and 19, 1997. Based on the stipulations of facts between the parties, the trial testimony and the exhibits submitted at trial, the court makes the following Findings of Facts and Conclusions of Law.

### II. FINDINGS OF FACT

1. Plaintiff Scanlon was a member of defendant GMSMA from 1987 to 1996. For several of those years, Scanlon served on GMSMA's Board of Directors. (Tr. at 50).[2]

2. Defendant GMSMA is a non-profit organization which advocates for the rights of gay men with a sadomasochistic lifestyle. (Tr. at 50). Defendants Kessler, Marcus and Weis are all members of GMSMA who have held various positions within the organization. (Tr. at 149–50, 254, 334–35).

3. Scanlon possesses Certificates of Registration from the United States Copyright Office for photographs entitled "Convergence", "Suspension", "Caged", "Pinned", "Standing Flame", and "Sitting Flame." (Exh. 1, 2, 3, 43, 44, 45).[3] These photo-graphs, taken by Scanlon, depict exhibits displayed at various GMSMA events. (Tr. at 51–52). In this action, Scanlon alleges that defendants infringed his copyright for two of these photographs, "Suspension" and "Pinned."

4. GMSMA did not hire Scanlon to take photographs at GMSMA events, and GMSMA never employed Scanlon. (Tr. at 150). Scanlon never sold his copyright for any of the photographs to GMSMA. (Tr. at 151). Scanlon never entered into a written agreement with GMSMA transferring his copyright for any of the photographs. (Tr. at 150–151).

5. Beginning in 1988, Scanlon provided GMSMA with photographs which he had taken at various GMSMA events. (Tr. at 52, 104–105). GMSMA used some of Scanlon's photographs from time to time in its organizational literature over the years. (Tr. at 54–57).

6. In early 1995, defendant Kessler gave two photographs ("Sitting Flame" and "Standing Flame") to Theodore Heaney ("Heaney") to accompany an article Heaney was writing for *Checkmate* magazine. Kessler never informed Heaney that Scanlon had taken the two photographs. (Tr. at 163–164). Kessler did not inform Scanlon that he was giving the two photographs to Heaney for inclusion in Heaney's article in *Checkmate* magazine. GMSMA policy provides that photographs taken at GMSMA events are only for the organization's internal use. (Tr. at 258). Defendant Kessler therefore violated GMSMA policy by providing the two photographs to Heaney for publication in *Checkmate* magazine, a magazine external to GMSMA. (Tr. at 164, 258). In May, 1995, Heaney's article was published in *Checkmate*, along with the two photographs. (Tr. at 163; Exh. 61). The article did not credit Scanlon as the photographer. (Exh. 61). At the time Kessler provided Heaney with "Sitting Flame" and "Standing Flame," Scanlon had not yet obtained Certificates of Registration

---

1. On May 23, 1997, plaintiff amended his complaint to include the allegation of defamation against defendants Marcus, Weis and GMSMA.

2. Citations following "Tr." refer to page numbers of the trial transcript.

3. Citations following "Exh." refer to plaintiff's exhibits which were admitted at trial.

from the United States Copyright Office for the two photographs. (Exh. 44, 45).

7. After Scanlon's photographs were published in *Checkmate* magazine, Scanlon wrote a letter to the members of the Board of Directors of GMSMA. In this letter, Scanlon informed the Board that he was concerned about the use of his photographs in *Checkmate* magazine and the lack of a comprehensive GMSMA photo policy. (Exh. 52). However, despite Scanlon's protests, no comprehensive photo policy was developed.

8. In late 1996, Scanlon encountered Weis in a club called "The Lure." Weis was distributing GMSMA fliers for an event called "LeatherFest." The fliers contained a photograph, entitled "Convergence", which had been taken by Scanlon. (Tr. at 72; Exh. 64). Scanlon informed Weis that he was upset that the photograph was being used without crediting Scanlon as the photographer. (Tr. at 71–72, 260–61). At the time the photograph was used in the GMSMA fliers, Scanlon had not yet obtained a Certificate of Registration from the United States Copyright Office. (Exh. 1).

9. In 1997, two photographs taken by Scanlon, "Suspension" (Exh. 29) and "Pinned" (Exh. 33), were posted on GMSMA's Internet site. (Tr. at 73, Exh. 63).

## III. CONCLUSIONS OF LAW

■ 10. A plaintiff alleging copyright infringement must establish that: (1) he owns a copyright for the work at issue; and (2) defendants copied protectible portions of the copyrighted work. *See Feist Publications, Inc. v. Rural Telephone Serv. Co., Inc.,* 499 U.S. 340, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991); *Rogers v. Koons,* 960 F.2d 301 (2d Cir.1992); *Arica Institute, Inc. v. Palmer,* 970 F.2d 1067 (2d Cir.1992); *Novelty Textile Mills, Inc. v. Joan Fabrics Corp.,* 558 F.2d 1090 (2d Cir.1977).

■ 11. Pursuant to 17 U.S.C. § 410(c), "the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." *See also Eckes v. Card Prices Update,* 736 F.2d 859

(2d Cir.1984). The presumption under § 410(c) is not conclusive; rather, it shifts the burden to defendants to prove that the copyright is invalid. *See Carol Barnhart, Inc. v. Economy Cover Corp.,* 773 F.2d 411 (2d Cir.1985).

■ 12. Copying by defendants of the copyrighted work may be proven by: (1) direct evidence of copying; or (2) circumstantial evidence that defendants "had access to the copyrighted work and that the two works are substantially similar." *Warner Bros., Inc. v. American Broadcasting Companies, Inc.,* 654 F.2d 204 (2d Cir.1981).

■ 13. As the court noted previously, Scanlon currently possesses Certificates of Registration from the United States Copyright Office for photographs entitled "Convergence", "Suspension", "Caged", "Pinned", "Standing Flame", and "Sitting Flame". Pursuant to 17 U.S.C. § 410(c), these certificates constitute prima facie evidence that Scanlon is the copyright owner of these photographs. Because Scanlon possesses Certificates of Registration for the photographs, the burden would be on the defendants to prove that Scanlon is not the copyright owner of these photographs. However, since defendants did not meet this burden, the court finds and concludes that Scanlon is now the copyright owner of the photographs entitled "Convergence", "Suspension", "Caged", "Pinned", "Standing Flame", and "Sitting Flame."

■ 14. As the presence of two of Scanlon's photographs ("Suspension" and "Pinned") on the GMSMA Internet site indicates, (Exh. 63), there is direct evidence that defendants copied "Suspension" and "Pinned" without authorization after Scanlon had obtained Certificates of Registration from the United States Copyright Office. (Exh. 2, 43). Thus, this court finds and concludes that the posting of "Suspension" and "Pinned" on GMSMA's Internet site without authorization, after Scanlon had obtained Certificates of Registration, infringed Scanlon's copyright in the two photographs.

15. This court finds and concludes, however, that the infringement of Scanlon's copyrights

for "Suspension" and "Pinned" was not willful.

For several years, Scanlon voluntarily took photographs of GMSMA exhibits and voluntarily provided GMSMA with the photographs which he had taken at various events. (Tr. at 52). There was and is a great deal of confusion within GMSMA about the scope and boundaries of the GMSMA photo policy. Since the GMSMA photo policy was not clearly defined, there were historically some disputes about what constituted proper use of the photographs which GMSMA had in its possession.

Although the use of Scanlon's photographs in *Checkmate* magazine clearly violated the GMSMA photo policy, as all parties understood it, Scanlon remained a GMSMA member, took no action against the organization or anyone else, and continued to take photographs at GMSMA events following this incident which were given to GMSMA. (Tr. at 50, 105, 172–73). Thus, before Scanlon applied for Certificates of Registration for "Suspension" and "Pinned", it is reasonable to conclude that defendants believed that they could continue to use Scanlon's photographs in GMSMA's promotional literature as they had been doing or on the GMSMA Internet site, with respect to "Suspension" and "Pinned."

■ Moreover, with respect to Scanlon's request for injunctive relief, after defendants received Scanlon's complaint in the instant case, some of the photographs which where identified as Scanlon's were removed from GMSMA's Internet site, (Tr. at 181, 227), clearly indicating an intention not to violate Scanlon's rights in the future. A necessary showing entitling one to injunctive relief, which speaks to the future, is a showing that defendants' behavior indicates that they are likely to continue their unlawful conduct in the future. *See Peer Int'l Corp. v. Luna Records, Inc.,* 887 F.Supp. 560 (S.D.N.Y. 1995); *Basic Books, Inc. v. Kinko's Graphics Corp.,* 758 F.Supp. 1522 (S.D.N.Y.1991).

The two photographs which remained on the Internet site, "Suspension" and "Pinned", were not immediately identified as Scanlon's. As Scanlon testified, he took thousands of photographs at GMSMA events throughout the years as a GMSMA member. (Tr. at 81). In addition, GMSMA's archives contain thousands of photographs taken by other photographers, and the photographs are not labeled based on who took them. (Tr. at 222). Significantly, plaintiff's complaint did not contain copies of the photographs at issue.

Considering the above factors, this court finds and concludes that plaintiff failed to prove that defendants' failure to immediately remove "Suspension" and "Pinned" from the GMSMA Internet site was willful. Since the defendants did remove some of Scanlon's photographs from the Internet site, it is reasonable to conclude that the failure to remove the remaining two photographs was due to confusion about which photographs were taken by Scanlon. Thus, this court finds and concludes that defendants' infringements of Scanlon's copyrights for "Suspension" and "Pinned" were not willful.

■ 16. As a defense to Scanlon's federal copyright claim, defendants invoke New York's Not–for–Profit Corporation Law § 720–a in their briefs. The court finds and concludes that the individual defendants are not liable for the infringements under § 720–a of the Not–for–Profit Corporation Law. Section 720–a of the Not–for–Profit Corporation Law provides that an individual director of a not-for-profit corporation can only be held liable for acts undertaken as a director if that person's acts "constituted gross negligence or was intended to cause the resulting harm to the person asserting such liability." The plaintiff has failed to prove that the defendants' actions in posting "Suspension" and "Pinned" on the GMSMA Internet site were grossly negligent or intended to cause Scanlon harm. This court finds and concludes that the individual defendants were acting within the scope of their authority, as members of the board of directors of GMSMA, when the photographs were posted on the Internet site, since posting photographs on GMSMA's Internet site was an activity undertaken to further the organization and its objectives.

■ 17. At trial, plaintiff elected to seek statutory damages pursuant to 17 U.S.C. § 504(c)(1). Plaintiff argued that, since de-

fendants willfully infringed his copyrights in "Suspension" and "Pinned", he is entitled to the maximum amount of damages ($100,000 per infringement). However, since the court finds and concludes that defendant GMSMA's infringement of Scanlon's copyrights for "Suspension" and "Pinned" was not willful, the court declines to grant plaintiff's request for maximum statutory damages. Rather, the court finds and concludes that based on the circumstances of this case, plaintiff is entitled to only minimal damages. Defendant GMSMA must pay Scanlon $500.00 for each Internet photograph GMSMA copied after plaintiff received Certificates of Registration from the United States Copyright Office. As noted above, plaintiff only proved infringement of two photographs, "Suspension" and "Pinned", which were both posted on GMSMA's Internet site after Scanlon had applied for Certificates of Registration from the United States Copyright Office in 1997. Thus, the court finds and concludes that defendant GMSMA must pay Scanlon a total of $1000.00.

■ 18. Plaintiff also seeks costs and attorney's fees pursuant to 17 U.S.C. § 505. Section 505 provides that "the court in its discretion may allow the recovery of full costs by or against any party ... the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." The court finds and concludes that as to the federal copyright claim, this case also warrants only a moderate award of attorney's fees and costs. Plaintiff's attorney is required to file the required affidavit. *See City of Detroit v. Grinnell Corp.*, 560 F.2d 1093 (2d Cir.1977), and its progeny. Thereafter, after defendants' response to the affidavit, a hearing will be held. Plaintiff is also directed to advise the court as to whether he wishes to pursue his New York State common law claims.

## IV. CONCLUSION

Based on the above Findings of Fact and Conclusions of Law, the court finds in favor of plaintiff on his claims of copyright infringement of the photographs entitled "Suspension" and "Pinned." The court finds and concludes that the infringements were not willful. Moreover, the court finds and con-

cludes that GMSMA, and not the individual defendants, is liable to plaintiff in the amount of $1000.00.

SO ORDERED.